THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Eileene Coleman, Respondent,
 v.
 Standard Insurance Company and The State Budget and Control Board, a political subdivision of 
 the State of South Carolina, Appellants.
 
 
 

Appeal From Laurens County
Wyatt T. Saunders, Jr., Circuit Court Judge

Unpublished Opinion No. 2006-UP-127
Submitted February 1, 2006  Filed March 7, 2006

REVERSED

 
 
 
 Michael T. Brittingham and James T. Hedgepath, both of Columbia, for Appellants.  
 Max T. Hyde, Jr., of Spartanburg, for Respondent.
 
 
 

PER CURIAM:  The circuit court reversed the decision of the Long Term Disability Appeals Committee of the Employee Insurance Programs terminating Eileene Colemans long-term disability (LTD) insurance benefits.  Standard Insurance Company and The State Budget and Control Board of South Carolina (Appellants) appeal the circuit courts decision.  We reverse.[1]
FACTS
Coleman worked as a registered nurse manager for the South Carolina Department of Corrections.  Coleman had LTD insurance through the States Long Term Disability Income Benefit Plan.  Standard Insurance Company is claims administrator of the Plan.  If a member becomes disabled while covered under the Plan, the member may receive LTD benefits.  To be eligible for benefits for the first two years of a disability, a member must meet the Plans Own Occupation definition of disability.  

 Own Occupation means any employment . . . that involves Material Duties of the same general character as your regular and ordinary employment with the Employer.  Your Own Occupation is not limited to your job with your Employer.  

In 2000, Doctor Byron Bailey diagnosed Coleman with a right-sided disc herniation at C5-6 based on an MRI scan.  Coleman had a history of chronic neck pain before this diagnosis and, since at least 1993, took several medications for this pain, for hypertension, and for depression.  On August 7, 2000, Coleman had a C5-6 anterior cervical diskectomy and fusion in an attempt to alleviate her pain.  As a result, Coleman applied for LTD benefits, which Appellants granted on November 20, 2000.[2]  
Over the next several months Colemans condition improved though she still complained of some pain.  In July 2001, Coleman saw Doctor Ronald A. McIver, a pain specialist, for the first time.  Coleman complained of significant pain in her cervical spine and upper torso.  Coleman indicated she could not do her household chores or enjoy her hobbies of traveling and gardening.  
After some treatments from Dr. McIver, and even though Coleman reported her condition had improved and she was sleeping better, Dr. McIver performed a nerve root block procedure to help with the pain.  Coleman reported excellent relief as a result of this procedure.  In early August, after Coleman returned from a five-day trip to Atlanta, she reported she was able to walk all over Atlanta.  She then went on a ten-day camping trip to Michigan, and the evidence indicates she tolerated her medications well, and her condition continued to improve.  
Doctor Elias Dickerman, a consulting physician for Appellants, reviewed Colemans file in the fall of 2001.  Dr. Dickerman noted Colemans position as a nurse manager may qualify as a medium capacity position, requiring some heavier lifting, only because of the potential that she might need to handle inmates directly.  Based on his evaluation of Colemans medical records, Dr. Dickerman concluded this patient can perform activities at the light capacity category with many activities up to the medium capacity category.  
Based on information related to Colemans South Carolina Retirement System (SCRS) claim and a questionnaire completed by Dr. Bailey describing Colemans physical capacities, Appellants determined that Coleman could perform the duties required by her job.[3]  Colemans claim was closed with a transitional benefit of $2,500.  Coleman appealed that determination.
As part of the appeal process, Dr. William Stewart, a Clinical Associate Professor of Rehabilitation Counseling and Neuropsychiatry and Behavioral Sciences, reviewed Colemans file.  He opined that Colemans job involved medium capacity work, with the reasonable expectation that the job would, in fact, require heavy and even very heaving physical strength in emergency situations.  He noted that the classification of registered nurse manager as light work is only intended as an average or guide in describing what a worker does/has to do physically. . . .  Finally, Dr. Stewart offered the following opinion after listing the medications Coleman took:  I have worked with many workers over the years who would not be able to maintain adequate concentration and attention span to perform a skilled job such as Registered Nurse Manger/Director of Nursing while taking these medications. 
Karol Paquette, a vocational case manager for Appellants, prepared a memorandum regarding Colemans appeal package and indicated that the United States Department of Labor listed Colemans occupation as sedentary.  Dr. Dickerman also reviewed Colemans appeal and concluded her occupation should be categorized as sedentary.  He further noted that Coleman could perform the duties of a registered nurse manager and that there appeared to be no cognitive side effects from her medication. 
The decision to close Colemans LTD claim was upheld by her caseworker, Appellants quality assurance unit, and by the appeals committee.  Coleman appealed to the circuit court, which reversed the committees decision.  The reversal was based largely on the conclusion Colemans pain medication could impede her ability to function in her present occupation or a similar one.  
LAW/ANALYSIS
Appellants argue substantial evidence in the record supports the committees decision to close Colemans LTD benefits on December 7, 2001, and, therefore, the circuit court misapplied its standard of review.  We agree.
Section 1-23-380(A) of the South Carolina Code (2005) provides for judicial review of the decision of a state agency.  Section 1-23-380(A)(6)(e) and (f) provide that, upon judicial review of the decision of a state agency:

 [t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.  The court may affirm the decision of the agency or remand the case for further proceedings.  The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are . . . (e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

          Therefore, this court must affirm the findings of fact made by the committee if they are supported by substantial evidence.  Tiller v. Natl Health Care Ctr. of Sumter, 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999); Lark v. Bi-Lo, Inc., 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981).  Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached.  Sharpe v. Case Produce, Inc., 336 S.C. 154, 160, 519 S.E.2d 102, 105 (1999); McGuffin v. Schlumberger-Sangamo, 307 S.C. 184, 186, 414 S.E.2d 162, 163 (1992).  When a conflict in the evidence exists, the findings of fact of the administrative agency are conclusive.  Glover v. Columbia Hosp. of Richland County, 236 S.C. 410, 418, 114 S.E.2d 565, 569 (1960).  The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agencys findings from being supported by substantial evidence.  Tiller, 334 at 338-39, 513 S.E.2d at 845.
The research of Paquette and Dr. Dickerman supports the committees finding that Colemans own occupation of nurse manager is sedentary in nature.  Likewise, Dr. Baileys evaluation of Coleman, Colemans SCRS testimony, and Dr. Dickermans opinion on Colemans limitations support the decision of the committee that Coleman is capable of performing sedentary to light work.  Finally, no evidence in the record indicates Coleman had cognitive difficulties as a result of her medication.  In fact, the substantial evidence in the record indicates Colemans medicine was effective and well tolerated.  
As a result of the record presented to it, the committee closed Colemans claim.  The committees decision emphasized Paquettes vocational review, Dr. Dickermans medical review, the notes of Bailey and McIver, and Colemans testimony to the SCRS.  In contrast, the circuit courts order emphasized Dr. Stewarts recommendations and comments, derived a different inference from Dr. McIvers notes, and weighed the other evidence differently than did the committee.  Under these circumstances, we hold the circuit court improperly applied its standard of review, and substantial evidence in the record supports the decision of the committee.  Therefore, the decision of the circuit court is
REVERSED.
GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] The benefits became retroactively effective on August 28, 2000.  
[3] Following her surgery Coleman also applied for disability retirement with the SCRS.  At a hearing in 2001, Coleman testified she could regularly drive a car, maintain her home, and walk short distances, and believed she could return to work as a nurse practitioner.  Her application for disability retirement was denied.