643 S.E.2d 96

**Isiah PORTER, Appellant,**

v.

**LABOR DEPOT, Employer, and Capital City Insurance Co., Carrier, Respondents.**

**No. 4212.**

Court of Appeals of South Carolina.

Heard Feb. 21, 2007.

Decided March 5, 2007.

Rehearing Denied April 19, 2007.

562

564

E. Ros Huff, Jr., of Irmo, for Appellant.

Grady L. Beard, of Columbia, for Respondents.

ANDERSON, J.:

In this workers' compensation action, the Appellate Panel of the South Carolina Workers' Compensation Commission (SCWCC) found Claimant Isiah Porter (Porter) and Labor Depot did not have an employer-employee relationship. Accordingly, the Appellate Panel did not have jurisdiction to award benefits. The circuit court affirmed the Decision and Order of the Appellate Panel. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Porter was injured on August 4, 2002, when he fell approximately twenty to thirty feet while allegedly working as a Labor Depot employee on the Strom Thurmond Fitness Center construction site in Columbia, South Carolina. Emergency Medical Services (EMS) transported Porter to Richland Memorial Hospital where he was diagnosed with a dislocated hip and multiple fractures. Subsequently, Porter underwent surgery on his hip and cervical spine to repair his injuries. As of his workers' compensation hearing date, Porter had not reached maximum medical improvement.

The Richland Memorial Hospital emergency room and consultation reports noted Porter was positive for ethyl alcohol (ETOH) on the day of the accident. Porter admitted to emergency room personnel he had been drinking earlier that day. He disclosed he usually drank about one and one half pints of liquor and one to two quarts of beer per day. Porter's own testimony at the hearing confirmed he had a life-long history of drinking alcohol. He drank every day prior to August 4, 2002. Additionally, Porter's medical history re-

vealed reports of alcohol abuse on four previous occasions: September 7, 1993; November 27, 1997; March 8, 2002; and May 7, 2002.

Porter was single and fifty-one years old at the time of the August 4, 2002 accident. He attended school through the seventh grade, studied automobile painting and body work with Job Corps, and was employed primarily in janitorial and laborer jobs. Porter has not worked in any capacity following the accident.

Labor Depot denied Porter's claim for workers' compensation benefits, maintaining he was not a Labor Depot employee.[1] Porter testified he completed an employment application and worked for Labor Depot for approximately six months prior to the accident. His duties included cleaning up around the landfill and on construction sites. He earned $300–$350 weekly. On the day of the accident, a Sunday, Porter went to work at 3:00 p.m. and had been on the job for approximately forty-five minutes when the accident occurred. He did not know the name of his supervisor or the name of the construction company on the job site that day, nor did he produce any documentation by way of check stubs or income tax returns as evidence of his employment with Labor Depot. Robert Brown, allegedly a co-worker employed by Labor Depot, testified he worked with Porter on August 4, 2002 and witnessed the accident. Brown did not present any additional evidence, other than his testimony, that he and Porter were employees of Labor Depot. In addition, South Carolina Employment Security Commission (SCESC) records from 2002 showed no evidence of any employment relationship between Porter and Labor Depot.

A Form 12A, Employer's First Report of Injury, dated October 30, 2002, was filed electronically with the SCWCC on Labor Depot's behalf. An undated, handwritten First Report of Injury or Illness was prepared by Capital City Insurance (Carrier). Porter filed a Form 50 requesting a hearing on

---

1. Labor Depot asserted intoxication, among other affirmative defenses, in the event the Appellate Panel determined an employer-employee relationship existed. In concluding that no such relationship existed, the Panel was without jurisdiction to determine whether intoxication was the proximate cause of the accident. Accordingly, the intoxication defense is not before this court for review.

January 29, 2004 and an Amended Form 50 on August 2, 2004. The hearing before the single commissioner on September 21, 2004, resulted in the following dispositive finding:

Claimant failed to meet his burden of proving, by the greater weight of evidence, that he was an employee of defendant, Labor Depot. Therefore, I find that the South Carolina Workers' Compensation Commission does not have jurisdiction to decide the matter. This Finding is based on the testimony of the witnesses, including the claimant, the exhibits, or lack thereof, presented by each party, and the discretion of the Hearing Commissioner as the fact finder in this case to properly weigh the evidence and judge witness credibility.

The Decision and Order of the Appellate Panel sustained and adopted the single commissioner's Order in its entirety. On appeal, the circuit court issued a Form 4 Order stating: "Decision of the Commission is affirmed."

## ISSUES

(1) Did the circuit court err as a matter of law in issuing a form order without making findings of fact or conclusions of law for review by the appellate court?

(2) Did the circuit court err as a matter of law in affirming the Appellate Panel's Decision and Order that Porter was not an employee of Labor Depot?

## STANDARD OF REVIEW

▮▮▮ Judicial review of a Workers' Compensation decision is governed by the substantial evidence rule of the Administrative Procedures Act. *Baxter v. Martin Bros., Inc.,* 368 S.C. 510, 513, 630 S.E.2d 42, 43 (2006); *Shealy v. Aiken County,* 341 S.C. 448, 535 S.E.2d 438 (2000). However, if the factual issue before the Commission involves a jurisdictional question, this court's review is governed by the preponderance of evidence standard. *Nelson v. Yellow Cab Co.,* 349 S.C. 589, 594, 564 S.E.2d 110, 112 (2002); *Vines v. Champion Bldg. Prods.,* 315 S.C. 13, 431 S.E.2d 585 (1993); *Lake v. Reeder Constr. Co.,* 330 S.C. 242, 498 S.E.2d 650 (Ct.App.1998). Consequently, our review is not bound by the Commission's findings of fact on jurisdiction. *Id.* A reviewing court has both the power and

duty to review the entire record, find jurisdictional facts without regard to conclusions of the Commission on the issue, and decide the jurisdictional question in accord with the preponderance of evidence. *Canady v. Charleston County Sch. Dist.*, 265 S.C. 21, 25, 216 S.E.2d 755, 757 (1975); *see also Kirksey v. Assurance Tire Co.*, 314 S.C. 43, 443 S.E.2d 803 (1994) (holding this court can find facts in accordance with the preponderance of evidence when determining a jurisdictional question in a Workers' Compensation case); *Sanders v. Litchfield Country Club*, 297 S.C. 339, 377 S.E.2d 111 (Ct.App.1989) (deciding where a jurisdictional issue is raised, this court must review record and make its own determination whether the preponderance of evidence supports the Commission's factual findings bearing on that issue).

The existence of the employer-employee relationship is a jurisdictional question. *Nelson*, 349 S.C. at 594, 564 S.E.2d at 112; *South Carolina Workers' Compensation Comm'n v. Ray Covington Realtors, Inc.*, 318 S.C. 546, 459 S.E.2d 302 (1995); *Edens v. Bellini*, 359 S.C. 433, 597 S.E.2d 863 (Ct.App. 2004); *see also Lake*, 330 S.C. at 247, 498 S.E.2d at 653 (holding existence of employer-employee relationship is jurisdictional question; injured worker's employment status, as it affects jurisdiction, is matter of law for decision by court and includes findings of fact that relate to jurisdiction).

The question of subject matter jurisdiction is a question of law. *Gray v. Club Group, Ltd.*, 339 S.C. 173, 528 S.E.2d 435 (Ct.App.2000); *Roper Hosp. v. Clemons*, 326 S.C. 534, 484 S.E.2d 598 (Ct.App.1997). On appeal from the Workers' Compensation Commission, this court may reverse where the decision is affected by an error of law. S.C.Code Ann. § 1–23–380(A)(5) (Act No. 387, 2006 S.C. Acts 387, eff. July 1, 2006); *Stephen v. Avins Constr. Co.*, 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996). The appellant bears the burden of showing that the circuit court's decision is against the preponderance of evidence. *Gray*, 339 S.C. at 182, 528 S.E.2d at 440 (*citing Lake*, 330 S.C. at 246, 498 S.E.2d at 653).

## *LAW/ANALYSIS*

### I. Circuit Judge's Form Order

Porter contends the circuit court erred in failing to make specific findings of fact and conclusions of law on the issue of

whether an employer-employee relationship between Porter and Labor Depot existed. We disagree.

Advancing his contention, Porter relies on *Bowen v. Lee Process Sys. Co.*, 342 S.C. 232, 536 S.E.2d 86 (Ct.App.2000), wherein this court remanded the trial court's grant of summary judgment for an order more specifically identifying the grounds for its ruling. In *Bowen*, we were unable to discern from the trial court's decision "whether the court found Defendants owed no duty to [Plaintiff], whether they owed a duty to [Plaintiff] and breached it, or whether they were negligent, but not grossly negligent." *Bowen*, 342 S.C. at 240, 536 S.E.2d at 90. In order to review the issue adequately, we required the trial court to articulate its rationale and legal analysis more precisely. Similarly, in *B & B Liquors, Inc. v. O'Neil*, 361 S.C. 267, 271, 603 S.E.2d 629, 631–32 (Ct.App. 2004), we instructed:

> On appeal from the grant of summary judgment, an appellate court must determine whether the trial court's stated grounds for its decision are supported by the record. It is our duty to undertake a thorough and meaningful review of the trial court's order and the entire record on appeal. Where, as here, the trial court fails to articulate the reasons for its action on the record or enter a written order outlining its rationale, we simply cannot perform our designated function.

■ However, not all situations require a detailed order, and the trial court's form order may be sufficient if the appellate court can ascertain the basis for the trial court's ruling from the record on appeal. *Clark v. S.C. Dep't of Pub. Safety*, 353 S.C. 291, 578 S.E.2d 16 (Ct.App.2002). "[T]here is no blanket requirement that the trial court set forth a separate explanation on all of its rulings." *Id.* at 312, 578 S.E.2d at 26; *see also Bailey v. Segars*, 346 S.C. 359, 550 S.E.2d 910 (Ct.App.2001) *cert. dismissed as improvidently granted* 354 S.C. 57, 579 S.E.2d 605 (2003) (holding a form order stating only that the appellant's post-trial motions for JNOV and new trial were denied was, together with the record of the proceedings, adequate to enable appellate review).

■ It is well settled that "[t]he findings of fact of an administrative body must be sufficiently detailed to enable the

reviewing court to determine whether the findings are supported by the evidence and whether the law has been properly applied to those findings." *Heater of Seabrook, Inc. v. Pub. Serv. Comm'n of S.C.,* 332 S.C. 20, 26, 503 S.E.2d 739, 742 (1998). Furthermore, courts reviewing the decisions of administrative agencies may look to written documents as well as records of proceedings as sufficient formats for final decisions. *Austin v. Bd. of Zoning Appeals,* 362 S.C. 29, 34, 606 S.E.2d 209, 212 (Ct.App.2004).

Here, the circuit court placed its imprimatur on the Appellate Panel's findings of fact and conclusions of law by affirming the Panel's decision. Accordingly, the Appellate Panel's findings of fact and conclusions of law, as incorporated by reference to the single commissioner's order, became those of the circuit court. The order encapsulated the single commissioner's ruling:

## FINDINGS OF FACT

The undersigned has carefully considered and reviewed all of the evidence presented by both parties in this claim, including the Claimant's testimony and the APA Submissions. From this evidence it is found as a fact that:

1. The claimant was not an employee of The Labor Depot, and the South Carolina Workers' Compensation Commission, therefore, lacks jurisdiction over this alleged claim.

2. The claimant alleges that he injured his back, neck, right shoulder, and right hip in a work-related accident, when he fell approximately 20 feet at a job site on August 4, 2002. This Finding is based on the Form 50 dated August 2, 2004.

3. The South Carolina Employment Security Commission records from 2002 show no entry for any employment relationship between claimant and defendant, The Labor Depot. In fact, they show claimant did not receive any wages during this time. This Finding is based on defendant's APA's # 38–48.

4. Claimant could not name his supervisor or the construction company for which he allegedly performed the work. Claimant also failed to remember when he first began his

employment with defendant, The Labor Depot. This Finding is based on the testimony of the claimant.

5. Although claimant stated that he had been paid by check, he produced no check stubs, tax records or other evidence of his employment. This Finding is based on the claimant's testimony as well as the exhibits or lack thereof submitted by claimant.

6. Claimant failed to meet his burden of proving, by the greater weight of the evidence, that he was an employee of defendant, The Labor Depot. Therefore, I find that the South Carolina Workers' Compensation Commission does not have jurisdiction to decide the matter. This Finding is based on the testimony of the witnesses, including the claimant, the exhibits or lack thereof, presented by each party, and the discretion of the Hearing Commissioner as the fact finder in this case to properly weigh the evidence and judge witness credibility.

7. Even if claimant were The Labor Depot's employee, it should be noted that medical records contradict claimant's testimony that he did not drink any alcohol on August 4, 2002; and also contradict claimant's testimony about his drinking habits generally. Therefore, I find that claimant was not credible (e.g., claimant testified at the time of the accident that he only drank on weekends; however, notes from EMS and the Emergency Room both state that he was positive for ETOH, and claimant told various health care providers that he drank everyday). This Finding is based on the claimant's testimony as well as the medical evidence in the record of the case.

8. Because I find that claimant did not prove that he was an employee of The Labor Depot, I do not reach the issue of whether claimant was intoxicated and whether that intoxication was the proximate cause of the accident. This Finding is based on the testimony of the witnesses, including the claimant, and the discretion of the Hearing Commissioner as the fact finder in this case to properly weigh the evidence and rule in the case.

9. Claimant's request for benefits under the Act is denied. This Finding is based upon all evidence in this case.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact and is [sic] provided in the South Carolina Code of Law § 42–17–40, as determination of this Commissioner that:

1. Under § 42–1–130, the claimant *was not* a covered employee at the time in question; therefore, the SCWCC has no jurisdiction over this alleged claim.

2. Under § 42–1–130, § 42–1–160, § 42–9–10 and § 42–15–60, the claimant has failed to carry the burden of proving that he was an employee of the Labor Depot, and that he is entitled to benefits under the South Carolina Workers' Compensation Act for an accident sustained in the course of his employment with The Labor Depot on August 4, 2002. The claimant's claim for benefits … is, therefore, denied.

The single commissioner's detailed findings were sufficient to allow the reviewing court to determine whether those findings were supported by the evidence and whether the law was properly applied to those findings. The Appellate Panel's Decision and Order, together with the record of the proceedings, adequately enabled the reviewing court to perform its designated duty. We find no error with regard to the format of the circuit court's order.

## II. Existence of Employer–Employee Relationship

Porter argues the greater weight of the evidence proves he had an employer-employee relationship with Labor Depot. We disagree.

Coverage under the South Carolina Workers' Compensation Act depends on the existence of an employment relationship. *Edens v. Bellini,* 359 S.C. 433, 439, 597 S.E.2d 863, 866 (Ct.App.2004) (*citing Nelson v. Yellow Cab Co.,* 349 S.C. 589, 564 S.E.2d 110 (2002); *McDowell v. Stilley Plywood Co.,* 210 S.C. 173, 41 S.E.2d 872 (1947); *Hancock v. Wal–Mart Stores, Inc.,* 355 S.C. 168, 584 S.E.2d 398 (Ct.App.2003)); *see also Gray v. Club Group, Ltd.,* 339 S.C. 173, 184, 528 S.E.2d 435, 441 (Ct.App.2000) ("Before provisions of the Workers' Compensation Act can apply, an employer-employee relationship must exist; this is an initial fact to be established."). Workers' compensation awards are authorized only if an employer-employee relationship exists at the time of the injury.

*Nelson,* 349 S.C. at 594, 564 S.E.2d at 112 *(citing Dawkins v. Jordan,* 341 S.C. 434, 534 S.E.2d 700 (2000)).

Section 42–1–130 of the South Carolina Code of Laws defines "employee" as

> every person engaged in an employment under any appointment, contract of hire, or apprenticeship, expressed or implied, oral or written, including aliens and also including minors, whether lawfully or unlawfully employed, but excludes a person whose employment is both casual and not in the course of the trade, business, profession, or occupation of his employer;

S.C.Code Ann. § 42–1–130 (Supp.2006).

■ Workers' compensation statutes are construed liberally in favor of coverage, and South Carolina's policy is to resolve jurisdictional doubts in favor of the inclusion of employees within workers' compensation coverage. *Nelson v. Yellow Cab Co.,* 343 S.C. 102, 538 S.E.2d 276 (Ct.App.2000) *aff'd* 349 S.C. 589, 564 S.E.2d 110 (2002) *(citing Mauldin v. Dyna–Color/Jack Rabbit,* 308 S.C. 18, 416 S.E.2d 639 (1992); *O'Briant v. Daniel Constr. Co.,* 279 S.C. 254, 305 S.E.2d 241 (1983); *Horton v. Baruch,* 217 S.C. 48, 59 S.E.2d 545 (1950); *Spivey v. D.G. Constr. Co.,* 321 S.C. 19, 467 S.E.2d 117 (Ct.App.1996); *McLeod v. Piggly Wiggly Carolina Co.,* 280 S.C. 466, 313 S.E.2d 38 (Ct.App.1984)).

■ The fundamental test of the employment relationship is the right of the employer to control the details of the employee's work. *Nelson,* 343 S.C. at 110, 538 S.E.2d at 280 *(citing Gray,* 339 S.C. at 184–85, 528 S.E.2d at 441). "It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment." *Young v. Warr,* 252 S.C. 179, 189, 165 S.E.2d 797, 802 (1969); *Gray,* 339 S.C. at 184–85, 528 S.E.2d at 441. "There are four elements which determine the right of control: 1) direct evidence of the right or exercise of control; 2) furnishing of equipment; 3) right to fire; and 4) method of payment." *Fuller v. Blanchard,* 358 S.C. 536, 542–43, 595 S.E.2d 831, 834 (Ct.App.2004) *(quoting Nelson,* 349 S.C. at 594, 564 S.E.2d at 113).

■ While the appellate court may take its own view of the preponderance of evidence on the existence of an employer-employee relationship, the final determination of witness credibility is usually reserved to the Appellate Panel. *See Dawkins v. Jordan,* 341 S.C. 434, 441, 534 S.E.2d 700, 704 (2000) (*citing Ford v. Allied Chem. Corp.,* 252 S.C. 561, 167 S.E.2d 564 (1969)).

■ In support of his argument that the greater weight of evidence supports an employer-employee relationship, Porter offered his own testimony. He averred he completed an employment application, worked for Labor Depot for approximately six months prior to his accident, and received paychecks from Labor Depot in the amount of $300–$350 weekly. Porter claims he reported to work on Sunday, August 4, 2002 at 3:00 o'clock in the afternoon and was instructed by the "boss man" to dismantle scaffolding at the Strom Thurmond Fitness Center construction site. About forty-five minutes after he had been on the site, he fell and sustained injuries. Porter submits that Labor Depot had the right of control over his employment because the "boss man" directed his work activities and Labor Depot told him when and where to work.

Porter's testimony lacks credibility. He professed to be employed with Labor Depot for approximately six months prior to August 4, 2002. Yet SCESC records showed no evidence of that employment. Moreover, SCESC records indicated Porter drew unemployment compensation from November, 2001, until June 9, 2002. In response to questioning about how he obtained unemployment compensation and worked for Labor Depot at the same time, Porter responded:

A: At that time of year you isn't employed every month. Sometimes they don't send you out every morning, every day. You don't get out every day. You know you get about one day a week or something like that.

Q: I appreciate that, Mr. Porter, but according to these records you were filing for and pursuing unemployment from July of 2001 until June of 2002.

A: Yeah.

Q: My question to you is if you were working for my client during that period of time how were you filing for unemployment every single week?

A: I wasn't making no money. I would probably get out about one day a week.

In addition, Porter's testimony concerning his alcohol consumption, both on the day of the accident and in general, conflicted with medical evidence provided in EMS reports, emergency room records, and prior medical histories. Significantly, Porter did not even recall previous injuries that apparently led to his disclosure of alcohol abuse to medical personnel.

Porter did not remember the name of the "boss man" who supervised the work site on the day of the accident, nor could he name the construction company involved in the project. Robert Brown testified he worked for Labor Depot along with Porter on August 4, 2002, and witnessed the accident. However, like Porter, Brown was unable to provide the name of the supervisor or the construction company. Neither Porter nor Brown offered any documentary evidence of employment with Labor Depot in the form of wage receipts, check stubs, copies of completed applications, W–2 forms, or copies of income tax returns. Concomitantly, we note the absence of personnel records and testimony from Labor Depot that Porter could have subpoenaed to support his position.

Porter invests the Form 12A Employer's First Report of Injury tendered on Labor Depot's behalf with more significance than it merits, suggesting that, as a declaration against interest, it was sufficient to establish an employment relationship between Porter and Labor Depot. Porter urges the Form 12A would not have been filed had he not been employed by Labor Depot.[2] Regulation 67–411 of the South Carolina Code Ann. (2006) requires, in pertinent part, that:

A. Each employer shall keep a record of all injuries, fatal or otherwise, received by its employees in the course of their employment. . . .

B. Employer's Responsibilities

2. Two Form 12As appear in the record. One Form 12A is handwritten, undated, and apparently prepared by the Carrier. The second Form 12A, dated October 30, 2002 was submitted electronically by the Carrier, apparently through Southeastern Claims Services. At the September 2004 hearing, the single commissioner opined: "I think it's clear that an insurance company filled this [Form 12A] out and not the employer."

(1) The employer shall make a record of all work-related injuries reported by its employees on the Form 12A and retain the record for a period of two years.

S.C.Code Ann. Regs. 67–411 (2006).

To infer, as Porter urges, that the filed Form 12A represents Labor Depot's record keeping of an employee's injuries strains credulity. On September 26, 2002, the SCWCC Claims Director notified the Carrier that a workers' compensation claim had been filed against its insured, Labor Depot. The Form 12A in the record on appeal, dated October 30, 2002, was filed by the Carrier, apparently in response to the Claims Director's request for the completed form. There is no evidence that anyone reported Porter's injury directly to Labor Depot. There is evidence, however, that a letter of representation from Porter's former counsel accompanied the Claims Director's request for the Form 12A. Dated September 12, 2002, that letter to the SCWCC, establishing a claim on Porter's behalf, contained all of the data needed to complete the Form 12A. The more tenable view of what the Form 12A represents in this case is that it was the Carrier's response to the SCWCC's notice of a filed claim rather than a representation of Labor Depot's record keeping of an employee's injury.

While we are mindful that jurisdictional doubts are generally to be resolved in favor of coverage, more than doubt taints Porter's claim that he was employed by Labor Depot. Considering the evidentiary record as a whole, including our own view of the testimony, medical reports, and exhibits or lack thereof, we conclude Porter failed to demonstrate by a preponderance of evidence that an employer-employee relationship with Labor Depot existed.

## CONCLUSION

We discern no error as a matter of law in the circuit court's form order affirming the decision of the Appellate Panel. In addition, we hold Porter failed to prove by the preponderance of evidence that an employment relationship existed. Lucidly, as a matter of law, Porter's claim does not fall within the jurisdiction of the South Carolina Worker's Compensation Commission.

576

Accordingly, the decision of the circuit court is **AFFIRMED.**

KITTREDGE and SHORT, JJ., concur.